IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Crim. No. 19-368-1, 6 |
| | : | |
| **HAMLET TANTUSHYAN et al.** | : | |

## O R D E R

Defendants Hamlet Tantushyan and Hrachya Gyulumyan (along with five others) are charged with participating in a massive conspiracy involving, *inter alia*, identity theft and bank fraud. (Indictment, Doc. No. 43.) Trial is presently set to begin on March 31, 2020. Serious questions have arisen regarding counsel representing both Defendants. I am especially concerned about whether Tantushyan and Gyulumyan are jointly represented and whether, in explaining their professional relationship, their lawyers have been candid with the Court.

Rule 44(c) obligates me to "promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, [I] must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c). Concerned about potential joint representation of Tantushyan and Gyulumyan, the Government moved for a judicial inquiry under the Rule to assess any potential attorney conflict. (Doc. No. 108.) The Government noted that California lawyers George Mgdesyan (who represents Tantushyan) and Sarkis Manukyan (who represents Gyulumyan) share office space and a legal assistant, thus suggesting that the two might be "associated in law practice," and jointly representing Tantushyan and Gyulumyan. Fed. R. Crim. P. 44(c)(B). The Government also noted that both Defendants had been represented at arraignment by local counsel from the same law firm, and that the attorney who ostensibly represented Gyulumyan appeared in

court on behalf of Tantushyan. (Doc. No. 108 ¶ 10.)

The wording, typeface, and formatting of Defendants' responses to the Government's Motion were virtually identical. (See Doc. Nos. 113 & 114.) Tantushyan and Gyulumyan emphasize that "both attorneys have taken proper steps to dissociate themselves from any matters relating to any co-defendant that the attorney is not representing to make sure no such conflict arises." (Gyulumyan Response, Doc. No. 114, ¶ 5; see also Tantushyan Response, Doc. No. 113, ¶ 4.) Although they share office space and an administrative assistant, they wrote that they maintain independent practices.

I ordered a Rule 44(c) hearing so that counsel could clarify this potentially problematic arrangement. Mr. Manukyan, who was first admitted to practice law on June 3, 2019, has informed the California Bar that his professional address is the "Mgdesyan Law Firm," that his email address is "sako@mgdesyanlaw," and that his telephone number is that of Mr. Mgdesyan's firm. Counsel's shared legal assistant has corresponded with both the Government and my Chambers on behalf of Defendants Tantushyan and Gyulumyan.

Unfortunately, counsel's sworn testimony at the November 5, 2019 Rule 44(c) hearing only raised disturbing questions. They provided vague and contradictory descriptions of their professional relationship. Mr. Manukyan testified that until June 3, he "worked for Mr. Mgdesyan" as "a clerk at his law office." (Tr. of Nov. 5, 2019 Hr'g, at 4:14–17.) Since June 3, he has been "in the process of splitting up." (Id. at 5:4.) Although Maukyan and Mgdesyan wrote that their practices are "independent," Manukyan testified that he has only "two cases on [his] own." (Id. at 5:5–6.)

Mr. Manukyan also testified that although there is no actual lease or employment agreement, he pays Mr. Mgdesyan some $2,000 per month in cash for rent and his share of the

legal assistant's salary.  (Id. at 8: 21–22 (Mr. Manukyan: "Just cash.  I give it to [Mgdesyan] at the end of the month.").)  Mr. Mgdesyan testified that Manukyan has never made such cash payments.  Rather, Mr. Mgdesyan assigns Mr. Manukyan to do work on Mgdesyan's cases, and the money Manukyan owes is "offset" by the lawyer services he provides.  (Id. at 14:11–15 (Mr. Mgdesyan:  "Well, we offset most of the money, if not all, with appearances.")  Mr. Mgdesyan referred the Gyulumyan representation to Mr. Manukyan—who, again, has been licensed to practice law for all of five months and has never tried a federal case—"because [he] trust[s]" Manukyan.  (Id. at 12:22.)

At first glance, it appears, at the very least, that by selecting a wholly inexperienced lawyer to represent Gyulumyan, Mr. Mgdesyan has effectively made himself (a lawyer with considerably more experience) counsel to both Tantushyan and Gyulumyan. "When both defendants are represented by the same counsel, counsel may understandably be inhibited in his efforts to demonstrate that one or the other defendant was the guilty party." Gov't of V.I. v. Hernandez, 476 F.2d 791, 794 (3d Cir. 1973).  So, too, when associated counsel represent co-defendants. See Fed. R. Crim. P. 44(c).  It is my responsibility to determine whether a joint representation exists, and if it does, to "apprise [Defendants] of the perils of joint representation." Hernadez, 476 F.2d at 794.

At present, I cannot reconcile the testimony of Messrs. Manukyan and Mgdesyan.  It thus appears that one of the two testified falsely.  I admonished that if that were so, there could be serious consequences.  See, e.g., Eagan by Keith v. Jackson, 855 F. Supp. 765 791 (E.D. Pa. 1994) (revocation of *pro hac vice* admission and referral to state attorney disciplinary authority was appropriate where attorney breached duty of candor to court).  In any event, it is apparent that I should review documentation of the professional relationship between Messrs. Mgdesyan and Manukyan before taking any further action.

Mr. Manukyan and Mr. Mgdesyan are **hereby ORDERED to provide the following documents and related information, going back to June 3, 2019:** (1) documentation and records of any payments made from Manukyan to Mgdesyan, including cash withdrawals from Manukyan's bank accounts to pay rent and salary expenses, and corresponding cash deposits into Mgdesyan's bank accounts; (2) any other documentation demonstrating Manukyan's contribution to the shared legal assistant's salary, employer FICA contribution, medical insurance, or other employee benefits; (3) invoices of client payments to Manukyan (and not to the Mgdesyan firm); (4) a list of all appearances Manukyan has made on Mgdesyan's behalf, detailing any agreed upon "set-off" compensation to Manukyan; (5) documentation demonstrating the existence of Manukyan's separate client, trust, and IOLTA accounts; (6) documentation demonstrating any income earned by Manukyan independent of the work he has done on Mgdesyan's cases; (7) payroll records of the Mgdesyan Law Firm; (8) documentation confirming existence of separate electronic document systems for the Mgdesyan firm and for Manukyan; (9) screen shots of Manukyan's and Mgdesyan's computer log-in to confirm they use separate computer systems, as represented at the Rule 44(c) hearing, (see Tr. of Nov. 5, 2019 Hr'g, at 11:7–8); (11) documentation of Manukyan's business card and email signature; and (12) sworn declarations by Manukyan and Mgdesyan explaining how they have complied with California Rules of Professional Conduct 1.5.1 (regulating unassociated lawyers' fee-sharing arrangements) and 7.5(c) ("A lawyer shall not state or imply that the lawyer practices in or has a professional relationship with a law firm or other organization unless that is the fact."). These materials must be submitted under seal; the Government will be allowed access. Should Mr. Mgdysian or Mr. Manukyan so request, the Court will redact any privileged information and make only the redacted document available to the Government.

Messrs. Manukyan and Mgdesyan shall **FILE** the requested documentation, independently and under seal, by **Friday, November 15, 2019, at 12:00 p.m. EST**.

                                                        **AND IT IS SO ORDERED.**

                                                        */s/ Paul S. Diamond*
                                                        _____
                                                        Paul S. Diamond, J.